

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

April 10, 1967

Hon. Joe Resweber
County Attorney
Harris County Courthouse
Houston, Texas

Opinion No. M-56

Re: Whether the Commissioners
Court of Harris County may
require that plans and
specifications of storm
sewers of Fresh Water Sup-
ply Districts be submitted
to the County Engineer,
for his approval, prior
to construction of such
sewers when the storm sewers
are to be located within
the areal confines of Harris
County roads; in subdivisions
not within cities; and on
private property not within
cities; and whether Texas
Water Rights Commission has
any authority to exercise
supervisory power over such
districts during the con-
struction and maintenance
of such storm sewers.

Dear Mr. Resweber:

Your request for an opinion of this office presents the fol-
lowing questions:

"1. Whether or not the Commissioners Court can require
that plans and specifications be submitted to the
County Engineer for his approval by the Fresh Water
Supply District prior to the actual construction and
installation of storm sewers, when said storm sewers
are located within the areal confines of Harris
County roads?

"2. Whether or not the Commissioners Court can re-
quire that plans and specifications be submitted to
the County Engineer for his approval by the Fresh
Water Supply District prior to the actual construction
and installation of storm sewers, when said storm
sewers are located within the areal confines of

of subdivisions, said subdivisions being located outside city limits?

"3. Whether or not the Commissioners Court can require that plans and specifications be submitted to the County Engineer for his approval by the Fresh Water Supply District prior to the actual construction and installation of storm sewers, when said storm sewers are built on privately owned lands, said lands being located outside city limits?

"4. Does the Texas Water Rights Commission (formerly Board of Water Engineers) have any authority to exercise any type of supervisory power over the fresh water supply districts prior to or during the construction and maintenance of storm sewers?"

The answer to your questions is dependent upon whether a Fresh Water Supply District is authorized to construct storm sewers; therefore, consideration shall first be given to such determination.

Article 7881, Vernon's Civil Statutes, in part, provides:

"There may be created within this State conservation districts to be known as Fresh Water Supply Districts for the purpose of conserving, transporting and distributing fresh water from lakes, pools, reservoirs, wells, springs, creeks, and rivers for domestic and commercial purposes, as contemplated by Section 59, Article 16 of the State Constitution." (Emphasis supplied)

Article 7918, Vernon's Civil Statutes, in part, provides:

"All districts shall have full power and authority to build, construct, complete, carry out, maintain, and in case of necessity add to and rebuild, all works and improvements within and without such district necessary to accomplish any plan of conservation, transportation and distribution of fresh water adopted for or on behalf of such district, and may make all necessary and proper contracts, and employ all persons and means necessary to that end;. . ."
(Emphasis Supplied)

Section 1, Article 7930-4, Vernon's Civil Statutes (as amended Acts, 66th Leg., 1957, ch. 232, Sec. 1, p. 484), provides as follows:

"All Fresh Water Supply Districts heretofore or
hereafter created under the provisions of Chapter
4 of Title 128, Revised Civil Statutes of Texas,
1925, as amended, in addition to the powers here-
tofore granted, are hereby authorized to pur-
chase, construct, acquire, own, operate, repair,
improve and extend sanitary sewer systems for
the collection, transportation, processing, dis-
posal and control of all domestic, industrial
and communal wastes provided no other public sani-
tary sewer system is available for the area con-
tained in such Fresh Water Supply District, and
the powers herein provided are not exercised ex-
cept after a duly called election held in the same
manner as other elections of such water district
as provided by law."

Your letter does not indicate that "no other public sanitary
sewer system is available for the area" nor does it show that an
election as provided in Article 7930-4 has been held; therefore,
the applicability of said Article 7930-4, not being shown, we must
look to Articles 7881 and 7918 for such authority. It is the opinion
of this office that Fresh Water Supply Districts have authority,
under Articles 7881 and 7918 to construct and maintain storm sewers
for the purpose of conserving fresh water, whether such storm sewers
are used to divert the storm waters from the reservoir or other
water source so as to avoid pollution, contamination, etc., or
whether they are used to more efficiently route the storm waters to
the lake, reservoir or other water source. This opinion is writ-
ten upon the presumption that the storm sewers mentioned in your
letter are to be built for one or both such purposes. However, were
the fact situation such as to make applicable the provisions of
Section 1 of Article 7930-4, then the purposes for which such storm
sewers could be built would be increased so as to include the
"collection, transportation, processing, disposal and control of
all domestic, industrial and communal wastes."

## I.

It is the opinion of this office that the Commissioners Court
may require that plans and specifications be submitted by the Fresh
Water Supply District to the County Engineer for his approval, prior
to the actual construction and installation of storm sewers, when
said storm sewers are to be located within the areal confines of
Harris County roads.

The Commissioners Court is charged with the duty of exercising
control over the roads in the county and is authorized to make and
enforce reasonable and necessary rules and orders for working said
roads.

Article 6741, Vernon's Civil Statutes, enacted in 1889, provides in part, as follows:

"The commissioners court may make and enforce all reasonable and necessary rules and orders for the working and repairing of public roads, and to utilize the labor to be used and money expended thereon, not in conflict with the laws of this State. . ."

Article 2351, Vernon's Civil Statutes, enacted in 1911, provides, in part, as follows:

"Each Commissioners Court shall:

". . .

"6. Exercise general control over all roads, highways, ferries and bridges in their counties."

The Harris County Road Law, Acts 33rd Leg., 1913 Special Laws, ch. 17, p. 64, provides, in part, as follows:

"Section 1. That, subject to the provisions of this Act, the commissioners court of Harris County shall have control of all roads, bridges, drains, ditches, culverts and all works and constructions incident to its roads, bridges, and drainage, that have been heretofore laid out or constructed, or that may hereafter be laid out or constructed by Harris County, or under its direction.

"Section 2. Subject to the provisions of this Act, the commissioners court of Harris County shall have the power and right to adopt such rules and regulations for the proper construction and maintenance of its roads, bridges and drainage as it may see proper, and shall have power from time to time to add to, alter, repeal or amend same;. . ."

". . .

"Section 33. The provisions of this Act are, and shall be, held and construed to be cumulative of all General Laws of this State, on the subjects treated in this Act, when not in conflict therewith, but in case of such conflict this Act shall control as to Harris County.

"Section 34. Any and all laws and parts of laws in conflict with any of the provisions of this Act shall be, and the same are hereby repealed."

Fresh Water Supply Districts have the right of way across county roads. Article 7927, Vernon's Civil Statutes, enacted in 1919, provides as follows:

"All districts are hereby given the right of way across all public or county roads, but they shall restore such roads where crossed to their previous condition for use, as near as may be."

Article 7928, Vernon's Civil Statutes, also a part of the same Act, provides:

"Said districts are authorized and empowered to make all necessary levees, bridges, and other improvements across or under any railroad embankments, tracks, or rights of way, or public or private roads or the rights of way thereof, or rivers or other public improvements of other districts, or other such improvements and the rights of way thereof, for the purpose of securing the fresh water supply necessary for said districts."

By Acts 50th Leg., 1947, ch. 205, p. 358, the Harris County Road Law was amended by the addition of a Section 7-A, which empowered the Commissioners Court of Harris County to grant to any person, firm or corporation an easement or right of way over, along or across any public road in Harris County under their jurisdiction, and authorized the court to prescribe such reasonable conditions or restrictions as it may find necessary or desirable, including the charging of a reasonable compensation.

In County of Harris v. Tennessee Products Pipeline Company, 332 S.W.2d 777, 781 (Tex.Civ.App. 1960, no writ hist.), a case questioning the authority of the Commissioners Court to require a pipe line company, which also has an analogous statutory right of way across county roads (Articles 6020, 6022 and 1497, V.C.S.) to obtain a permit or franchise prior to crossing such road, the court stated:

"It is a general rule of statutory construction
that statutes must be so construed as to be
reconciled if possible. The intention of the
Legislature is of primary importance. The Legis-
lature does not express any intention to repeal
or modify, nor does it make any mention of,
Articles 6020, 6022 and 1497 either in the title
or the body of the Amendatory Act. We must,
therefore, consider whether the amendment is so
repugnant to Articles 6020, 6022 and 1497 that
only such amendment can stand. We think no such
repugnancy exists. The statutes are reconcil-
able. In 39 Tex.Jur., p. 141, Sec. 75, Statutes,
it is stated: 'Where there is no express re-
peal, the presumption is that in enacting a new
law the legislature intended the old statute to
remain in operation.'"

". . .

"The Amendment provides for the authorizing and
regulating of the granting of easements across
or along roads by the Commissioners Court, etc.
The critical section of the Amendatory Act is a
new section known as '7-A.' It provides in part
that the Commissioners Court of Harris County
shall have the power to grant to any person,
firm or corporation an easement or right of way
over, along, or across any public road or high-
way in Harris County and under the jurisdiction
of the Commissioners Court in Harris County,
outside of the limits of any incorporated city
or town. Such section then provides certain
terms and conditions under which such person,
etc., shall use or occupy the easement or right
of way, and provides that the Commissioners
Court may prescribe such reasonable conditions
or restrictions as it may find necessary or de-
sirable. It also provides that no such easement
or right of way shall be granted when it im-
pedes or seriously interferes with the use and
occupancy of such public thoroughfare as such,
nor shall it be granted without adequate provision
for the protection and repair of the road or
thoroughfare by suitable bond."

". . .

"In Humble Pipe Line Co. v. State, Tex.Civ.App.,
2 S.W.2d 1018, error ref., the court held that
the right expressly granted by Article 1497 and
rights which followed by necessary implication,
could be taken away from a pipe line corporation
only by a special act of the Legislature denying
such right.  Surely the 1947 amendment does not
constitute such special act as would be required
to take away from pipe line companies the powers
and rights conferred upon them by Articles 6020,
6022 and 1497, V.A.C.S.  Nor does it purport to
take away such powers and rights.  It does not
provide that no person, firm or corporation shall
cross a county road without a grant or permit
from the Commissioners Court.  It simply gives
the Commissioners Court the power to grant ease-
ments.  It does not give the County power to
grant crossing rights to public utilities
and common carriers as such, nor does it men-
tion them or the statutes which give them such
power, either in its title or body.  It does
confer upon the Commissioners Court the power to
grant such rights to any person, firm, corpora-
tion, which would include private corporations,
and which would cover private water, gas, sewer
and other private corporations, and which would
cover private water, gas, sewer and other private
lines of a local nature.  It does not, however,
confer upon the Commissioners Court 'exclusive'
power to grant such rights.

"The County, as hereinbefore stated, clearly
has the right and power to enforce reasonable
regulations in connection with the construction
and maintenance of pipe lines crossing its roads,
but it has no right to use its regulatory power
in such manner as to deny pipe lines the right
to cross under roads and highways under its con-
trol.  We are of the opinion that it has no
right to demand pipe line companies such as
appellee, engaged in laying inter-county pipe
lines, obtain from it a permit or franchise
before constructing crossings under such roads.
We find no inconsistency or repugnancy between
Articles 6020, 6022 and 1497, V.A.C.S., as they
relate to pipeline companies such as appellees
doing an inter-county business, and the afore-
said Amendatory Act as it relates to persons and
corporations both private and public conducting
local business witin the confines of the county."

As held in Tennessee Products Pipeline Co., supra, the applicable statutes must be construed so as to be reconciled if possible. As a pipe line company has a right to cross a county road under Articles 6020, 6022 and 1497, it follows that under Articles 7881 and 7918, Fresh Water Supply Districts have a right of way across county roads. It is the opinion of this office that the Commissioners Court may neither require such district to obtain a permit or franchise, nor may it require such district to submit plans and specifications of its proposed crossings before such district has the right to so cross. However, under Articles 6741, 2351, and under Sections 1 and 2 of the Harris County Road Law, the Commissioners Court of Harris County is charged with the duty of general control over all roads and they are authorized to make reasonable and necessary rules and orders for working such roads and the maintenance thereof.

Such statutes are either in hopeless conflict or they may be reconciled. This office is of the opinion that such statutes may be reconciled and that, in part, quoting from the case of Tennessee Products Pipeline Co., supra, "The County. . . .clearly has the right and power to enforce reasonable regulations in connection with the construction and maintenance of" Fresh Water Supply District storm sewers "crossing its roads, but it has no right to use its regulatory power in such manner as to deny" Fresh Water Supply Districts "the right to cross under roads and highways under its control."

In holding that a water district could be required to bear the expense of lowering its water lines crossing streets, taken into the limits of the City of San Antonio after the laying of the lines, so as to conform to new city improvements, in the case of City of San Antonio v. Bexar Metropolitan Water District, 309 S.W.2d 491 (Tex.Civ.App. 1958, error ref.), the Court said:

> "The main purpose of roads and streets are for travel and transportation, and while public utilities may use such roads and streets for the laying of their telegraph, telephone and water lines, and for other purposes, such uses are subservient to the main uses and purposes of such roads and streets."

A like expression was contained in City of San Antonio v. United Gas Pipe Line Co., 388 S.W.2d 231 (Tex.Civ.App. 1965, error ref., n.r.e.).

In the case of State of Texas v. City of Austin, 160 Tex. 348, 331 S.W.2d 737, 741, (1960), the Court also expressed a like opinion in holding that:

"As pointed out in the Bexar Metropolitan
Water District case, the main purposes of
roads and streets are for travel and trans-
portation. While public utilities may use
the same for laying their lines, such use is
subject to reasonable regulation by either
the state, the county or the city, as the
case may be. The utility may always be re-
quired, in the valid exercise of the police
power by proper governmental authority, to
remove or adjust its installation to meet
the needs of the public for travel and
transportation."

It is, therefore, the opinion of this office that the Commis-
sioners Court may require Fresh Water Supply Districts to submit
plans and specifications to the County Engineer for his approval
prior to the actual construction and installation of storm sewers,
when said storm sewers are located within the areal confines of
Harris County roads, as it is a valid exercise of the police power
by the governmental agency charged with the duty of control over
such roads. It is further the opinion of this office that such
regulation may not be used by the Commissioners Court so as to de-
feat the right of way of the Fresh Water Supply District to cross
such roads, but that such regulation and its use will be governed
by a standard of necessity and reasonableness, from an abuse of
which any party would, of course, have its redress in court.

It is further the opinion of this office that, in view of the
foregoing authorities, had your letter of request set out facts
indicating the applicability of Section 1, of Article 7930-4, as
amended, the first question none the less would have been answered
in a like manner and as above conditioned.

## II.

It is the opinion of this office that your second question
should be answered in the negative, insofar as it relates to storm
sewers of Fresh Water Supply Districts to be located outside the
areal confines of Harris County roads.

The brief accompanying your request suggests that Article
2372 K, Vernon's Civil Statutes, grants to the Commissioners Court
the continuing power of regulation of, or control over, drainage
in subdivisions after the authorization by the Commissioners Court
of the recordation of the subdivision plat.

It is the opinion of this office, as expressed in Attorney General's Opinion C-66 (1963), that Article 2372 K must be considered in pari materia with Article 6626, Vernon's Civil Statutes, and that it constitutes a registration statute setting out certain prerequisites that may be required before a plat is approved for recordation; that the Commissioners Court may not make requirements not therein authorized; and that the statute does not purport to grant any powers of regulation by the Commissioners Court after recordation that are different from, or in addition to, the powers they have over any other area in the county. Commissioners Court v. Frank Jester Development Co., 199 S.W.2d 1004, 1007 (Tex.Civ.App. 1960, error ref. n.r.e.).

Article 6771, Vernon's Civil Statutes, and Section 14 of the Harris County Road Law, set out certain powers in the Commissioners Court in regard to drainage and the regulation thereof; but it is the opinion of this office that such statutes also must be read in conjunction with Articles 7881 and 7918, granting certain powers to Fresh Water Supply Districts. If the Commissioners Court had the authority to require its prior approval of a Fresh Water Supply District storm sewer plans and specifications generally, such would in effect nullify the provisions of Articles 7881 and 7918.

Therefore, it is the opinion of this office that insofar as lands in subdivisions, outside the areal confines of county roads, are concerned, the Commissioners Court is without authority to require that a Fresh Water Supply District submit to the County Engineer its plans and specifications of proposed storm sewers for his approval prior to the construction thereof. Fresh Water Supply District storm sewers, to be placed within the areal confines of county roads within subdivisions, would be governed by the same laws as storm sewers within the areal confines of county roads not within subdivisions, and the question as to the prior submission of such plans and specifications to the County Engineer for his approval would be included within, and answered by, the answer to your first question.

## III.

It is the opinion of this office that your third question should be answered in the negative, for the same reasons as set out in answer to your second question insofar as such answer applies to lands in subdivisions, but outside the areal confines of county roads

## IV.

We are not authorized to answer your fourth question, as it appears that the subject matter thereof does not concern the Commissioners Court and you can only advise said Court on matters concerning it's official duties.

## SUMMARY

A Fresh Water Supply District may construct storm sewers necessary to accomplish a plan of conservation of fresh water. The Harris County Commissioners Court may require that plans and specifications of such district's storm sewers, that are to be located within the areal confines of Harris County roads, be submitted to the County Engineer prior to the construction thereof; but may not require such plans and specifications to be submitted in situations where the storm sewers are to be located in subdivisions, outside city limits and not within the areal confines of county roads; and may not require the submission of such plans when the storm sewers are to be built on private property located outside city limits.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Harold G. Kennedy
Assistant Attorney General
HGK:bp


APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-chairman
Roger Tyler
Houghton Brownlee, Jr.
Pat Bailey
John Duren

STAFF LEGAL ASSISTANT
A. J. CARUBBI, JR.